# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

IN RE:
**DOMENIC E. MASELLA**                                   Chapter  7

      **Debtor**                                            Case No.  05-24302

---

|  |  |
|---|---|
| **BL DEVELOPMENT CORP. d/b/a** ) | |
| **GRAND CASINO TUNICA,** ) | |
| **ATLANTIC CITY SHOWBOAT, INC.** ) | **Adversary Proceeding** |
| **d/b/a SHOWBOAT HOTEL & CASINO,** ) | |
| **BALLY'S PARK PLACE, INC., d/b/a** ) | **No. 06-2010** |
| **CLARIDGE CASINO AT BALLY'S,** ) | |
| **And as successor in interest to BALLY'S** ) | |
| **SKYSCRAPER, INC., d/b/a CLARIDGE** ) | |
| **CASINO HOTEL, BROADWAY** ) | |
| **REGENCY CORPORATION, d/b/a** ) | |
| **CAESARS ATLANTIC CITY and** ) | |
| **BALLY'S PARK PLACE, INC. as** ) | |
| **Assignee of GNOC, CORP., d/b/a** ) | |
| **ATLANTIC CITY HILTON** ) | |

      **Plaintiffs**                                          )

   **v.**                                                      )

**DOMENIC E. MASELLA**                                    )

      **Defendant**                                          )

---

**APPEARANCES:**

William H. Harris, Esq.
c/o Walter J. Onacewicz, Esq., Nair & Levin, P.C.
707 Bloomfield Ave.,  Bloomfield, CT  06002
Counsel for Plaintiffs

Walter J. Onacewicz, Esq.
Nair & Levin, P.C.
707 Bloomfield Avenue,  Bloomfield, CT  06002
Counsel for Plaintiffs

William J. Cintolo, Esq.
c/o Neal Ossen, Esq., Ossen & Murphy
21 Oak Street, Suite 201, Hartford, CT 06106
Counsel for Defendant-Debtor

---

## RULINGS ON DEBTOR'S TWO MOTIONS IN LIMINE

## TO EXCLUDE TESTIMONY

**KRECHEVSKY, U.S.B.J.**

### I.

### BACKGROUND

Domenic E. Masella ("the debtor), the debtor in a Chapter 7 bankruptcy case commenced on October 13, 2005[1], is an admitted professional gambler. With the exception of first and second mortgages on his home, all of the secured and unsecured claims against the debtor, the aggregate amount of which is $1,820,760.03, are owed to various gambling casinos and were incurred in the course of the debtor's activities. The above-captioned plaintiffs (together "the plaintiffs"), casino creditors of the debtor, on January 25, 2006, filed a "Complaint to Determine Dischargeability of a Debt and to Deny Discharge," seeking, in Count I, to have debts owed the plaintiffs held nondischargeable under Bankruptcy Code §523(a)(2)(A) (debt obtained by false pretenses, a false representation, or actual fraud) and, in Count II, to have the debtor denied a discharge under §727(a)(3) (failure to keep or preserve adequate financial records).

---

[1] The debtor's case was originally filed under Chapter 11 and was converted to Chapter 7 on October 26, 2005.

2

II.

## DEBTOR'S MOTION TO EXCLUDE TESTIMONY OF RICHARD P. FINKEL

### A.

To support their allegations under §737(a)(3), the plaintiffs have disclosed Richard P. Finkel ("Finkel"), a forensic accountant, as an expert witness and his written report as to the adequacy of the debtor's recordkeeping. The debtor, on June 14, 2007, filed a motion in limine to exclude the testimony of Finkel as an expert witness. The plaintiffs have filed a response objecting to the granting of the motion.

### B.

### DISCUSSION

Bankruptcy Code §727(a)(3) provides for denial of a discharge to a debtor if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."

> The purpose and intent of [§727(a)(3)] of the Bankruptcy Act is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs. Section 727(a)(3) also ensures that creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history.
>
> To implement this record-keeping requirement, §727(a)(3) provides a two-step approach. The initial burden lies with the creditor to show that the debtor failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained. If the creditor shows the absence of records, the burden falls upon the bankrupt to satisfy the court that his failure to produce them was justified.

D.A.N. Joint Venture v. Cacioli (In re Cacioli), 463 F.3d 229, 234-35 (2d Cir. 2006) (citations and internal quotation marks omitted).

3

Fed. R. Evid. 702, "Testimony by Experts," provides:

If scientific, technical, or other specialized knowledge will assist the trier
of fact to understand the evidence or to determine a fact in issue, a
witness qualified as an expert by knowledge, skill, experience, training,
or education, may testify thereto in the form of an opinion or otherwise,
if (1) the testimony is based upon sufficient facts or data, (2) the
testimony is the product of reliable principles and methods, and (3) the
witness has applied the principles and methods reliably to the facts of the
case.

Fed. R. Evid. 703, "Bases of Opinion Testimony by Experts," states:

The facts or data in the particular case upon which an expert bases an
opinion or inference may be those perceived by or made known to the
expert at or before the hearing. If of a type reasonably relied upon by
experts in the particular field in forming opinions or inferences upon the
subject, the facts or data need not be admissible in evidence in order for
the opinion or inference to be admitted. Facts or data that are otherwise
inadmissible shall not be disclosed to the jury by the proponent of the
opinion or inference unless the court determines that their probative
value in assisting the jury to evaluate the expert's opinion substantially
outweighs their prejudicial effect.

Fed. R. Evid. 704(a), "Opinion on the Ultimate Issue," states:

[T]estimony in the form of an opinion or inference otherwise admissible
is not objectionable because it embraces an ultimate issue to be decided
by the trier of fact.

Finkel is a forensic accountant with extensive experience in examining the

records of debtors in both individual and business bankruptcies. He is a Certified

Public Accountant, Certified Fraud Examiner, and Certified Insolvency and

Restructuring Advisor. Finkel's affidavit states that he examined "all of the financial

books, records and documents produced by the Debtor in this case," as well as records

provided to the Office of the United States Trustee in the debtor's 2003 bankruptcy

case in New Hampshire,[2] and that the methods and procedures he employed are based

---

[2] The debtor's New Hampshire bankruptcy case was dismissed.

4

upon his experience and practice as a certified public accountant and certified fraud examiner.

The debtor argues that Finkel lacks experience specific to the gaming industry. The court is satisfied that Finkel is qualified by his education and experience to testify as an expert on the adequacy of the debtor's financial records. A forensic accountant need not have experience in a particular industry in order to be admitted as an expert. See Wechsler v. Hunt Health Systems, Ltd., 381 F.Supp.2d 135 (S.D.N.Y. 2003) (a forensic accountant was qualified to testify as an expert despite a lack of experience in the health care industry). The debtor's "arguments better relate to the weight, rather than the admissibility," of the expert testimony at issue. Id. at 144.

Citing  Grimes v. Hoffmann-LaRoche, Inc., 907 F.Supp. 33, 34 -35 (D.N.H. 1995), and other cases concerning the admissibility of scientific evidence, the debtor also urges the court to exclude Finkel's testimony on the grounds that his analysis does not comport with the criteria applicable to the testimony of a scientific expert:  (1) whether the opinion can be or has been tested; (2) whether the theory or technique on which the opinion is based has been subjected to peer review and publication; (3) the technique's known or potential error rate; (4) the existence and maintenance of standards controlling the technique's operations; and (5) "general acceptance."

The Supreme Court, in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), held:

> We conclude that Daubert's[3] general holding - setting forth the trial
> judge's general "gatekeeping" obligation - applies not only to testimony

---

[3]  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge…. But, as the Court stated in <u>Daubert</u>, the test of reliability is flexible, and <u>Daubert's</u> list of specific factors neither necessarily nor exclusively applies to all experts in every case. Rather, the law grants a district court … broad latitude when it decides how to determine reliability….

…

To say this is not to deny the importance of <u>Daubert's</u> gatekeeping requirement. The objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert … employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

<u>Kumho Tire</u>, 526 U.S. at 141, 152.

<u>Daubert</u> and other cases … concerned scientific evidence, which relies upon the scientific methods and should be objectively testable. Experts in disciplines that require the use of professional judgment are less likely candidates for exclusion because challenges may be ultimately viewed as matters in which reasonable experts may differ in exercising their judgment as to the appropriate methodology to employ or the appropriate variable to plug into a calculation. <u>See, e.g.</u>, <u>Joy Recovery Technology</u>, 286 B.R. at 70 ("[a]ccounting is not an exact science. Accountants are therefore required to make judgments about how to communicate financial information. A <u>Daubert</u> hearing is not the time to fully test the validity of those assumptions."). Such matters may be and should be explored and highlighted through cross-examination of the expert and presentation of contrary evidence, not at the preliminary admissibility stage. In non-scientific disciplines … where the use of professional judgment may produce a broad range of acceptable opinions, so long as the expert possesses at least one of the qualifying attributes listed in Rule 702 (specialized knowledge, skill, education, experience or training), has employed a methodology recognized in the profession or by the courts, and can identify the source of the facts and data underlying the opinion (demonstrating a connection of the opinion to the facts of the case), a probing cross-examination and presentation of opposing experts and evidence will permit the fact-finder to judge the soundness of the expert's judgment, as well as the expert's credibility and potential bias, in order to assess how much weight to accord the expert's opinion.

<u>In re Commercial Financial Services, Inc.</u>, 350 B.R. 520, 528 -529 (Bankr. N.D.Okla.

2005).

Finkel's affidavit states: "My approach to and method of conducting this

6

examination and analysis are consistent with the practices and methodology I employ on a daily basis as a certified public accountant and certified fraud examiner." (Aff. 4-5.) In performing his analysis, Finkel "reviewed all of the financial books, records and documents produced by the Debtor in this case .... all of the records produced by the various casinos where [the debtor] gambled which were obtained in response to subpoenas issued by the New Hampshire office of the United States Trustee.... all of [the debtor's] prior testimony from his various §341 meetings, Rule 2004 examinations and deposition testimony.... [and] the testimony of the debtor's wife and the debtor's accountant." (Aff. 4.)

The court concludes that the debtor's objections to Finkel's testimony concern its credibility, rather than its admissibility, and can be addressed at trial. Accordingly, the court concludes that Finkel is sufficiently qualified and that his methodology and data are sufficiently reliable and relevant to satisfy the gatekeeping requirements of Fed. R. Evid. 702, <u>Daubert</u>, and <u>Kumho Tire</u>, and that his testimony is thus admissible as expert testimony.

### III.

### DEBTOR'S OMNIBUS MOTION IN LIMINE

The Debtor's second motion, filed on June 14, 2007, seeks to exclude the testimony of certain of the plaintiffs' other disclosed witnesses.

The plaintiffs have conceded that they no longer intend to call as witnesses Brian F. Tierney ("Tierney") or Geraldine Karonis ("Karonis") of the New Hampshire Office of the U.S. Trustee nor to proffer as evidence the charts or reports created by Tierney. Accordingly, the court grants the debtor's motion to exclude such testimony and

documents.

The debtor testified at his deposition that he had provided certain financial records to Victor Dahar ("Dahar"), his former attorney in his 2003 New Hampshire bankruptcy case, to be forwarded to the Office of the U.S. Trustee. The New Hampshire U.S. Trustee's Office has provided the plaintiffs with copies of the documents.

The plaintiffs obtained from the New Hampshire U.S. Trustee's Office copies of "six pages of credit card records" it had received from the debtor in his 2003 bankruptcy case. The debtor testified at his deposition that he had no records of his credit card transactions to produce; that the only such records he recalled producing were those he had given to Dahar to be forwarded to the Office of the U.S. Trustee; that he did not know what records Dahar had so forwarded or the present whereabouts of the records he had given Dahar. The plaintiffs allege that such records are incomplete and seek to question Dahar as to whether the debtor had given him any additional credit card records. The debtor argues that he has not waived attorney-client privilege and that Dahar should thus be precluded from testifying.

> [The Second Circuit Court of Appeals] has recognized that implied waiver [of attorney-client privilege] may be found where the privilege holder asserts a claim that *in fairness* requires examination of protected communications. We have stated ... that fairness considerations arise when the party attempts to use the privilege both as a shield and a sword. In other words, a party cannot ... affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party.

In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000) (citations and internal quotation marks omitted).

The court concludes that the debtor, having asserted that he could not produce

8

the requested credit card records because he had given all such records to Dahar, cannot now, in fairness, preclude Dahar from testifying as to whether the copies provided by the U.S. Trustee's Office were the only credit card records provided by the debtor. The court denies the debtor's motion to exclude Dahar's testimony, but limits his testimony to the identity, contents and disposition of the records the debtor provided him for release to the New Hampshire Office of the U.S. Trustee.

The debtor seeks to exclude the prior deposition testimony of Theresa Masella, Michael DiCarato, and Gerald DiMare, partly on the grounds that he believes they will appear at trial. Fed. R. Civ. P. 32, concerning the use of deposition testimony in court proceedings states: "The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds ... (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing...." Fed. R. Civ. P. 32(a)(3)(B). The plaintiffs provided evidence that each of the aforementioned witnesses is at least 100 miles from the courthouse. At this point, the court denies the debtor's motion to exclude such depositions.

## IV.

## CONCLUSION

In accordance with the forgoing discussion, the court concludes that:

(1)    the debtor's motion to exclude Finkel as an expert witness is denied;

(2)    the debtor's motion to exclude the testimony of Tierney and Karonis and the charts and reports prepared by Tierney is granted;

(3)    the debtor's motion to exclude testimony of Dahar is denied, but such testimony is limited as indicated, _supra_; and

(4)     the debtor's motion to exclude deposition testimony of Theresa Masella, Michael

DiCarato, and Gerald DiMare is denied.

The Clerk's Office shall reschedule the final pretrial conference.  It is

SO ORDERED.

Dated at Hartford, Connecticut this ⌐ day of August, 2007.


_____
ROBERT L. KRECHEVSKY
UNITED STATES BANKRUPTCY JUDGE

10